UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEVIN BONNER,

    Plaintiff,

v.

NORMANDY PARK, and DETECTIVE JOHN LIEVERO,

    Defendants.

CASE NO. C07-962RSM

ORDER

## **I. INTRODUCTION**

This matter comes before the Court on "Defendant City of Normandy Park's Motion for Summary Judgment" (Dkt. #39), and "Defendant John Lievero's Motion for Summary Judgment" (Dkt. #40). Defendants argue that Plaintiff's 42 U.S.C. § 1983 claims and state law claims against Defendant John Lievero ("Detective Lievero") should be dismissed because Detective Lievero is entitled to qualified immunity. Defendants contend that Detective Lievero had probable cause to effectuate an arrest on Plaintiff because Plaintiff refused to comply with his lawful orders. Therefore Defendants contend that Detective Lievero's conduct was reasonable under the circumstances. Defendants also argue that no liability exists with respect to the City of Normandy Park because Plaintiff cannot establish that the City of Normandy Park has a policy or custom in place that caused Plaintiff's alleged injuries.

Plaintiff responds that there clearly exists a genuine issue of material fact with respect to whether Detective Lievero's conduct was reasonable. Plaintiff contends that he did not violate

any lawful orders because he was never given any chance to comply with such orders. Plaintiff also argues that he never resisted arrest and that the force used against him was excessive under the totality of the circumstances. Furthermore, Plaintiff clarifies that the City of Normandy Park is vicariously liable for the acts of Detective Lievero under the state law doctrine of respondent superior only, and that he is not claiming municipal liability under 42 U.S.C. § 1983.

For the reasons set forth below, the Court DENIES "Defendant City of Normandy Park's Motion for Summary Judgment," and GRANTS IN PART "Defendant John Lievero's Motion for Summary Judgment."

## II. DISCUSSION

### A. Background

The instant civil action arises from a series of events that took place on April 25, 2005. On that day, Plaintiff Kevin Bonner - along with his wife, Nancy Bonner, his daughter, Karis Miles, and his granddaughter, Reagan Miles-Bjurback - went to the Normandy Park police station. Mr. Bonner scheduled an appointment with Detective Lievero in order to provide him with information regarding Mr. Bonner's wife, who was subject to an ongoing criminal investigation of assault. Mr. Bonner and his family met with Detective Lievero in his office, and according to Mr. Bonner, Detective Lievero was uncooperative and appeared uninterested in any of the information Mr. Bonner and his family wanted to provide him. (Decl. of Bonner, Dkt. #50, ¶ 8). Mr. Bonner claims he became "frustrated by having to confront a detective assigned to the investigation, but who appeared to know nothing about the case and was unresponsive to the information we wanted to provide." (*Id.* at ¶ 10). From Detective Lievero's point of view, he claimed that Mr. Bonner and his family "were already in an emotionally charged state regarding the child abuse investigation against Mrs. Bonner" when they came in for the meeting. (Decl. of Lievero, Dkt. #45, ¶ 15). He further claims that "[d]uring the meeting, which didn't last very long, Plaintiff continued to become more agitated and angry. I terminated the meeting in the first place because of Plaintiff's emotionally charged demeanor and his raised and angry voice." (*Id.*).

Detective Lievero then instructed everyone to leave, and everyone left as directed and

MEMORANDUM ORDER
PAGE - 2

proceeded back to the reception area of the police station, with the exception of Mr. Bonner. Instead of taking a left towards the reception area, it is undisputable that Mr. Bonner took a right and headed towards Chief of Police Rick Kieffer's ("Chief Kieffer") office. Mr. Bonner states that "[a]fter I turned right toward the Chief's office, Detective Lievero said 'you can't leave that way.' I responded while walking that I was not intending to leave, but I wanted to speak with the Chief. Detective Lievero stated that if I wanted to speak with the Chief that I needed to make an appointment, and that I needed to return to [the reception area]." (Decl. of Bonner, ¶ 13). What happened next is in dispute. According to Mr. Bonner, he states that:

> By the time Detective Lievero had finished making this statement, I had stopped and had already arrived at Chief Kieffer's door. Chief Kieffer was standing at the door and Detective Lievero was running down the hall toward me . . .
>
> Without any explanation or further instructions, Lievero grabbed my left wrist and arm, forcing my arm behind my back . . . Immediately thereafter another non-uniformed officer appeared. [Officer Paul Melewski ("Officer Melewski")] took [my] left arm from Lievero, and Lievero took my right arm, and they began to walk me down the hall to reception . . .
>
> I did not struggle with any of the officers. I did not yell at a Normandy Park police office. I did not brake with my feet when being escorted down the hallway or at any other time in the Normandy Park Police Department on April 25, 2005. I did not resist the officers in any way.

(Decl. of Bonner, ¶¶ 13-16).

Furthermore, Mr. Bonner alleges that upon arriving at the end of the hallway, and without warning, he was tased a total of four times. (*Id.* at ¶ 18). He also claims that once he was on the ground, Detective Lievero placed his knee on Mr. Bonner's head and bent his glasses. (*Id.*). Soon thereafter, Mr. Bonner claims he was handcuffed and escorted into a booking area. (*Id.* at ¶ 19).

Meanwhile, Detective Lievero claims that a different version of events occurred. He states that:

> When [Mr. Bonner] turned right to leave the detective's office where we were meeting, it was my perception that he was upset and agitated. During our meeting, he seemed to be intentionally provocative by saying things such as I was playing "coy" with him, and he knew I was "not an idiot." From my perspective, [Mr. Bonner] was yelling as he demanded to see the Chief.
>
> When [Mr. Bonner] charged towards the Chief of Police's office, I was cognizant of the fact that he hadn't been frisked for weapons when I first escorted him into the police

MEMORANDUM ORDER
PAGE - 3

department . . . I was overall concerned with the Police Chief's safety, my own safety during our encounter, and the safety of the civilians nearby as I directed and confronted Mr. Bonner . . . . [Mr. Bonner's] complete disregard for my repeated verbal commands to go back to the reception, that he would have to make an appointment to see the Chief, and that he would be placed under arrest if he did not go back to the reception, further heightened my concerns for everybody's safety. I believed it prudent to detain [Mr. Bonner].

(Decl. of Lievero, ¶¶ 16, 17).

Detective Lievero then claims that Officer Melewski was unsuccessful in placing Mr. Bonner in a position to be handcuffed. (*Id.* at ¶ 18). As a result, Detective Lievero decided to discharge his taser to gain Mr. Bonner's compliance and control. (*Id.*). Detective Lievero claims that he only discharged the taser twice. (*Id.*). Detective Lievero then proceeded to place Mr. Bonner under arrest.

After being escorted to the booking area, Mr. Bonner was examined by medics and released. Notably, Mr. Bonner acknowledges that he asked to pay a fine for his conduct following these events. (Decl. of Bonner, ¶ 19). Mr. Bonner was eventually charged with obstructing a public servant in violation of RCW 9A.76.020. Mr. Bonner agreed to a stipulated order of continuance with conditions, and the charges were eventually dismissed after Mr. Bonner complied with the conditions.

Soon thereafter, Mr. Bonner filed the instant complaint in King County Superior Court on June 5, 2007. (Pl.'s Compl., Dkt. #1 at 3). The case was removed to this Court two weeks later. In his complaint, Mr. Bonner brings excessive force and false arrest and imprisonment claims under 42 U.S.C. § 1983. Mr. Bonner also brings false arrest and imprisonment claims under Washington State common law, as well as assault and battery claims. In addition, Mr. Bonner claims that the City of Normandy Park is vicariously liable for the acts of Detective Lievero under the theory of respondent superior. Defendants now bring the instant motions for summary judgment.

**B.     Standard of Review**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

MEMORANDUM ORDER
PAGE - 4

matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. v. Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). Mere disagreement, or the bald assertion that a genuine issue of material fact exists, is insufficient to preclude summary judgment. *California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *Id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995).

### C. Qualified Immunity

Detective Lievero argues that Plaintiff's claims must be dismissed because he is entitled to qualified immunity. Qualified immunity is a doctrine which precludes a government official from facing liability for his or her conduct. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege "is an *immunity from suit* rather than a mere defense to liability." *Id.* (emphasis in original). To determine whether qualified immunity exists, a court must engage in a two-step analysis. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Id.* (citing *Siegert v. Gilley*,

500 U.S. 226, 232 (1991)). If a court determines that no constitutional right would have been violated were the allegations established, there is no need to continue with the analysis. *Id.* However, if a constitutional right was violated, the second inquiry is to ask whether the right was clearly established. *Id.* In other words, a court must determine "whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right." *Jackson v. City of Bremerton*, 286 F.3d 646, 651 (9th Cir. 2001). Moreover, in deciding a motion for summary judgment in a section 1983 action, courts must "look first to whether there was a constitutional violation and then to whether defendants have qualified immunity, even if the qualified immunity inquiry would resolve the case more easily." *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008). Accordingly, the Court examines each inquiry in turn.

### 1. Constitutional Right

#### a. False Arrest

Plaintiff contends that he was falsely arrested and imprisoned in violation of the Fourth Amendment. "Whether an arrest is constitutionally valid depends . . . upon whether, at the moment the arrest was made, the [officer] had probable cause to make it." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Probable cause exists if the facts and circumstances within an officer's knowledge are "sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense." *Id.* (citations omitted). Probable cause cannot be determined by applying precise definitions or rigid classifications of conduct. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Instead, "probable cause is a fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Therefore the specific circumstances surrounding the arrest are an indispensable part of the analysis. *Rodis v. City and County of San Francisco*, 499 F.3d 1094 (9th Cir. 2007). Courts should examine "the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Pringle*, 540 U.S. at 371 (internal quotations and citation omitted). Importantly, probable cause is an

MEMORANDUM ORDER
PAGE - 6

objective standard, and the arresting officer's subjective intention is immaterial in judging whether his actions were reasonable under the Fourth Amendment. *See United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).

In the instant case, the Court is sufficiently satisfied that Detective Lievero had the requisite probable cause to effectuate a lawful arrest upon Mr. Bonner. Under Washington law, "[a] person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstruct any law enforcement officer in the discharge of his or her official powers or duties." RCW 9A.76.020(1). Moreover, a person's "refusal to stop when instructed to do so . . . [constitutes] an obstruction of a police officer in the exercise of his official duties." *State v. Little*, 116 Wash.2d 488, 496, 806 P.2d 749 (1991). "[A]n officer need not have probable cause for every element of the offense." *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994). Here, it is clear that Mr. Bonner turned right and headed toward Chief Kieffler's office when he was clearly instructed by Detective Lievero to head left towards the reception area. Detective Lievero also informed Mr. Bonner that he could not go that way, but Mr. Bonner proceeded to head towards Chief Kieffler's office anyhow. Once Mr. Bonner refused to obey Detective Lievero's lawful commands, Detective Lievero clearly had probable cause to detain Mr. Bonner and arrest him for obstruction of a public servant, which he eventually did.

Nevertheless, Mr. Bonner argues that whether he refused to comply with a lawful order is a question of fact. (Dkt. #48 at 7). Mr. Bonner specifically suggests that given the short distance between the Chief Kieffler's office and Detective Lievero's office, he was not given an opportunity to comply with Detective Lievero's orders until he arrived at Chief Kieffler's office door. However, this argument overlooks Mr. Bonner's own deposition testimony where he clearly acknowledges he did not return to the reception area as directed. His deposition testimony provides:

> Q: When you decided to walk to the right out of the office, towards Chief Kiefer's [sic] office, what happened next?
>
> A: Officer Lievero said, "You can't leave that way."
>
> Q: So you agree that Officer Lievero communicated to you that you were not to walk towards Chief Kiefer's [sic] officer, correct?

MEMORANDUM ORDER
PAGE - 7

|     |     |     |
| --- | --- | --- |
| 1   | A:  | No. He told me I couldn't leave that way. |
| 2   | Q:  | So just to be clear, you agree that Officer Lievero communicated to you that you could not leave that way. |
| 3   | * * * | |
| 4   |     |     |
| 5   | A:  | That's correct. |
|     | Q:  | And so did you go back to reception? |
| 6   | A:  | No. |
| 7   | Q:  | Officer Lievero communicated to you that you needed to return to reception, correct? |
| 8   |     |     |
| 9   | A:  | Yes. |

10 (Dep. of Kevin Bonner, 116:18 - 117:10).

11       Mr. Bonner's testimony is consistent with his own declaration, which, as mentioned

12 above, provides that "[a]fter I turned right toward the Chief's office, Detective Lievero said

13 'you can't leave that way.' I responded while walking that I was not intending to leave, but I

14 wanted to speak with the Chief." (Decl. of Bonner, ¶ 13). Furthermore, Mr. Bonner's

15 statements are consistent with the deposition testimony of his wife, Nancy, which provides:

|     |     |     |
| --- | --- | --- |
| 16  | Q:  | [W]hat happened after Karis stepped out of the officer? |
| 17  | A:  | And then Kevin got up and walked out and immediately turned right to go down and talk to the chief. |
| 18  |     |     |
| 19  | Q:  | And did you hear Detective Lievero say anything at that point? |
| 20  | A:  | He told Kevin he couldn't exit that way, because there's also an exit door and an exit sign down at the end of the hallway. And he told Kevin, You can't exit that way. You have to exit the other way. |
| 21  | * * * | |
| 22  |     |     |
| 23  | Q:  | Okay. Were you watching your husband at that point? |
|     | A:  | Yes. |
| 24  | Q:  | When you heard Detective Lievero make a statement, the gist of it being that you can't exit that way, what did your husband do? |
| 25  |     |     |
| 26  | A:  | He said, I'm not leaving, I'm going to talk to the chief. |

27 (Dep. of Nancy Bonner, 136:21 - 138:6).

28       Therefore there is no doubt that Mr. Bonner clearly refused to obey Detective Lievero's

commands. Once Mr. Bonner showed an unwillingness to comply with such commands, Detective Lievero unequivocally possessed the requisite probable cause to arrest Mr. Bonner, irrespective of the distance between Chief Kieffler's office and Detective Lievero's office. Mr. Bonner simply cannot refute the fact that he proceeded to Chief Kieffler's office after clearly being instructed to go the opposite direction. Under such circumstances, Detective Lievero had probable cause to effectuate an arrest. Therefore Mr. Bonner's false arrest and imprisonment claim under 42 U.S.C. § 1983 fails.

### b. Excessive Force

Mr. Bonner also argues that Detective Lievero used excessive force in effectuating his arrest. The use of force to accomplish an arrest, even where supported by probable cause, can violate the Fourth Amendment. *See Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993). Therefore whether an individual is subject to excessive force in violation of the Fourth Amendment requires the Court to consider the Fourth Amendment's reasonableness standard set forth in *Graham v. Connor.* 490 U.S. 386, 395 (1989). To determine whether force is reasonable, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation and citations omitted). Among the factors courts are to consider are: (1) the severity of the crime; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest. *Id.* (citation omitted). A court is not limited to these factors. "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, the reasonableness of a seizure must instead be assessed carefully considering the objective facts and circumstances that confronted the arresting officers." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (internal quotations and citation omitted). A court may, for example, consider the availability of alternative methods of capturing or subduing a suspect in determining reasonableness. *See Chew v. Gates*, 27 F.3d 1432, 1441 n. 5 (9th Cir. 1994). Fourth Amendment jurisprudence has ultimately recognized that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical

MEMORANDUM ORDER
PAGE - 9

coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.

Applying these rules to the incident at issue, the Court finds that a jury could reasonably find that Detective Lievero's use of force was excessive. With respect to the *Graham* factors, the Court finds that all three factors weigh in favor of Mr. Bonner. First, the severity of the crime at issue is minimal. Although all crimes can to some degree be considered egregious, obstructing a law enforcement officer is a gross misdemeanor under Washington law. *See* RCW 9A.76.020(3). In addition, Mr. Bonner was not engaged in an underlying crime at the time of his arrest. He was at the police department to provide information regarding a criminal investigation upon his wife.

Second, whether Mr. Bonner posed an immediate threat to the safety of officers or others is also in doubt. This factor is considered as the most important single element of the three specified factors. *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994). Defendants suggest that because Detective Lievero had probable cause to arrest Mr. Bonner, he was also justified in applying the taser on Mr. Bonner to gain his control. But as mentioned above, the use of force to accomplish an arrest, even where supported by probable cause, can violate the Fourth Amendment. *See Palmer*, 9 F.3d at 1436. The critical inquiry here is whether Mr. Bonner posed a threat *at the time* Detective Lievero tased Mr. Bonner. And in this case, a jury could reasonably find that no such threat existed given the objective testimony offered by Mr. Bonner. For example, Mr. Bonner submits the deposition testimony of Officer Melewski, the third officer onto the scene who helped place Mr. Bonner under arrest. Officer Melewski's deposition testimony provides:

Q: Were you able to control Mr. Bonner as you walked him down the hall?
A: Yes.
Q: Did Mr. Bonner attempt to strike you at any time?
A: It's hard to answer that, because he was under control and I'm not sure what he would have done if I let go. But as I held onto him, he didn't have the ability to strike.
Q: So he never attempted to do so, is that correct?
A: Again, it's hard to answer because how he was pulling, I don't know if he was

| | |
|---|---|
| 1 | pulling away to strike me or pulling away to get away. It's hard for me to answer that. |
| 2 | |
| 3 | Q: As far as you could tell, did he ever attempt to strike Officer Lievero? |
| 4 | A: No. |
| 5 | Q: Did he ever attempt to strike Chief Kieffer? |
| 6 | A: No. |
| 7 | Q: Did you see him attempt to grab for Officer Lievero's weapon, any weapon that he might have had? |
| 8 | A: Not from my vantage point. |

(Dep. of Melewski, 49:14 - 50:12).

Furthermore, Defendants offer no conclusive evidence that Mr. Bonner posed a threat *at the time* Detective Lievero discharged his taser on Mr. Bonner. Indeed, there is a noticeable gap between the time Detective Lievero lawfully seized Mr. Bonner once Mr. Bonner refused to obey his commands and the time Mr. Bonner was tased. A jury could certainly conclude that during this time, the officers gained control of the situation, thereby precluding the need for Detective Lievero to discharge his taser.

With respect to the third *Graham* factor, the Court likewise finds that whether Mr. Bonner was resisting arrest at the time Detective Lievero discharged his taser is in doubt. Again, it is clear that Detective Lievero possessed probable cause to initially detain Mr. Bonner for refusing to obey lawful commands. But whether Detective Lievero needed to subsequently tase Mr. Bonner is a separate inquiry. Both parties only offer self-serving statements supporting their positions. Mr. Bonner states that he was not resisting arrest, while Defendants argue that he was actively resisting. In addition, without knowing conclusively the degree to which Mr. Bonner resisted arrest, the Court also cannot determine the reasonableness of Detective Lievero's conduct under the Normandy Park Police Department's "Advanced Taser Policy." (*See* Decl. of Lievero, Ex. C). The policy indicates that a taser "maybe used when a subject is threatening himself, an officer, or another person with physical force and other means of controlling the subject are unreasonable or could cause injury to the officer(s), the subject or others." (*Id.*). Moreover, under the police department's use of force continuum, a taser should

MEMORANDUM ORDER
PAGE - 11

only be used when the subject is actively resisting. (*Id.*). These issues cannot be resolved without any objective evidence, and a jury could certainly find that Detective Lievero may have exceeded the scope of police department policy. Thus, the jury must resolve the factual discrepancies and summary judgment would be improper.

The Court also finds that there is also a dispute as to the amount of times Mr. Bonner was tased. Defendants claim that Mr. Bonner was tased only twice, offering a data print-out that establishes two discharges of Detective Lievero's taser during the incident at issue. (Decl. of Morella, ¶ 7, Ex. A). However, Mr. Bonner points out that Defendants' own expert acknowledges that the taser used in this case, a M26 Taser, does not reliably record the time and date of each cycle. (*See* Dep. of Ovens, 102:17 - 103:2). In addition, Mr. Bonner provides the medical report of his doctor who treated Mr. Bonner the day after the incident. The report clearly states that Mr. Bonner was tased at least three separate times. (Decl. of Needle, Ex. I at 78). Thus, there remains an issue of fact as to the amount of times Mr. Bonner was tased. Without knowing the number of times he was tased, the Court cannot properly weigh the use of force employed on Mr. Bonner with the governmental interests at stake.[1]

Ultimately, the Court notes that summary judgment should be granted sparingly in excessive force claims. *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) ("Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.").

---

[1] Notably, the Court finds it worthwhile to mention that Mr. Bonner has not been forthright in his representations to the Court or to opposing counsel with respect to the amount of times he was tased. In his interrogatory responses, made under oath, Mr. Bonner claims he was tased five times. (Decl. of Bannon, Ex. J at 85). In his response to the City of Normandy Park's motion for summary judgment, also made under oath, he claims he was tased three times. (Dkt. #49 at 15). Yet again in his own declaration, made under oath, he claims he was tased four times. (Decl. of Bonner, ¶ 18). And in his complaint, made under oath, Mr. Bonner claims he was tased twice in the neck, and numerous times on his stomach and back. (Pl.'s Compl., ¶ 2.10). Despite such inconsistencies, the Court finds sufficient evidence in the record to find that Mr. Bonner may have been tased more than the two times claimed by Defendants.

MEMORANDUM ORDER
PAGE - 12

This is because police misconduct cases "almost always turn on a jury's credibility determinations." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003). The facts of this case are no different. They provide a classic scenario of an individual's word against a police officer's word. The only conclusive finding that the Court can make at this time beyond a finding of probable cause is the situation was highly emotional and highly charged. And in the absence of any objective evidence that Detective Lievero's use of force was justified, the Court cannot conclusively find that Mr. Bonner's Fourth Amendment constitutional right to be free from excessive force was not violated. Therefore Mr. Bonner's excessive force claim survives this stage of the analysis.

### c. Due Process

Mr. Bonner also alleges in his complaint that Defendants violated his due process rights under the Fourteenth Amendment. Defendants argue that Mr. Bonner's due process claims should be dismissed, based on well-established case law that suggests that a plaintiff cannot claim a violation of substantive due process where the claim is already covered by a specific constitutional provision, such as the Fourth Amendment, which is implicated here. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (citations omitted). The Court agrees. Mr. Bonner is sufficiently protected by the Fourth Amendment in the case at bar, and any due process claims are inappropriate. In any event, Mr. Bonner did not respond to Defendants' due process arguments. The Court treats this silence as an admission that Defendants' arguments have merit. *See* Local Rule 7(b)(2). Thus, Mr. Bonner's due process claims shall be dismissed.

### 3. Establishment of Constitutional Right

The next inquiry in the qualified immunity analysis is to determine whether a constitutional right is clearly established. *Saucier*, 533 U.S. at 201. In making this inquiry, the Court must determine whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Id.* "A reasonable belief that the conduct was lawful is sufficient to secure qualified immunity." *McDade v. West*, 223 F.3d 1135, 1142 (9th Cir. 200) (citation omitted). This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case. *San Jose Charter of Hells Angels Motorcycle Club v. City of*

*San Jose*, 402 F.3d 962, 971 (9th Cir. 2005) (citations omitted).

Based on this case law, Defendants argue that Detective Lievero is entitled to qualified immunity because no prior case law existed at the time of Mr. Bonner's arrest that would have put Detective Lievero on notice that his conduct was clearly unlawful. In addition, Defendants argue that Detective Lievero's actions, even if mistaken, entitle him to qualified immunity so long as his conduct was reasonable. *See Jackson*, 268 F.3d at 651. However, Defendants conflate this inquiry with the first. Defendants essentially re-argue that Detective Lievero's conduct was reasonable, and therefore argue at this stage of the analysis that no constitutional right was established at the time of Mr. Bonner's arrest. But the law does not require plaintiffs to prove that a specific analogous case existed at the time the plaintiff suffered an alleged constitutional violation. Indeed, "it is not necessary that the alleged acts have been previously held unconstitutional, as long as the unlawfulness was apparent in light of existing law." *Drummond*, 343 F.3d at 1060-61. It was clear at the time of Mr. Bonner's arrest that individuals clearly had a right to be free from the use of excessive force under the Fourth Amendment. In addition, the Court has already determined that whether Detective Lievero's use of force was reasonable is a question of fact for the jury to decide. Therefore Detective Lievero is not entitled to qualified immunity for Mr. Bonner's excessive force claim under 42 U.S.C. § 1983.

### D. Plaintiff's State Law Claims

Plaintiff also brings state law claims for false arrest and imprisonment, as well as assault and battery. "False arrest occurs when a law enforcement officer . . . unlawfully restrains or imprisons another by physical force, threat of force, or conduct reasonably implying the use of force against the detainee should he resist." *Demelash v. Ross Stores, Inc.*, 105 Wn. App. 508, 529, 20 P.3d 447 (2001) (citing *Bender v. City of Seattle*, 99 Wash.2d 582, 591, 664 P.2d 492 (1983)). The existence of probable cause is a complete defense to an action for false arrest or false imprisonment. *McBride v. Walla Walla County*, 95 Wn. App. 33, 38, 975 P.2d 1029 (1999) (citations omitted). Here, the Court has established that Detective Lievero had probable cause to arrest Plaintiff. Therefore Plaintiff's state law claims for false arrest and imprisonment

MEMORANDUM ORDER
PAGE - 14

shall be dismissed.

Meanwhile, "[a] battery is a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent." *McKinney v. City of Tukwila*, 103 Wn. App. 391, 408, 13 P.3d 631 (2000) (internal quotations and citation omitted). "An assault is any act of such a nature that causes apprehension of battery." *Id.* (citation omitted). Put another way, "[a]n assault occurs when there is an attempt to unlawfully use force or inflict bodily injury on another, accompanied by the present apparent ability to give effect to the attempt if not prevented." *Guffey v. State*, 103 Wash.2d 144, 149, 690 P.2d 1163 (1984) (citations omitted).

Here, Defendants claim that Detective Lievero is immune from liability for Mr. Bonner's state law claims under state law qualified immunity. Unlike the qualified immunity doctrine at the federal level, an officer has state law qualified immunity from suit where the officer "(1) carries out a statutory duty, (2) according to procedures dictated to him by statute and superiors, and (3) acts reasonably." *Staats v. Brown*, 139 Wash.2d 757, 778 (2000). Notwithstanding the first two factors, the immunity does not apply here. The Court has previously determined that there remains a genuine issue of material fact with respect to whether Detective Lievero's use of force was reasonable. Accordingly, Mr. Bonner's state law claims of assault and battery likewise survive summary judgment.

### E. Plaintiff's Claims Against the City of Normandy Park

Mr. Bonner also claims that the City of Normandy Park is liable for Detective Lievero's intentional torts. "Vicarious liability, otherwise known as the doctrine of respondent superior, imposes liability on an employer for the torts of an employee who is acting on the employer's behalf." *Niece v. Elmview Group Home*, 131 Wash. 2d 39, 48 (1997). Here, because the Court has determined that Mr. Bonner's intentional tort claims of assault and battery shall not be dismissed, Mr. Bonner's state law claims against the City of Normandy Park remain as well. To the extent that Defendants seek dismissal of any municipal liability claims against the City of Normandy Park under 42 U.S.C. § 1983, Mr. Bonner has made clear that his claims against the City of Normandy Park are for vicarious liability only. Therefore Mr. Bonner does not have a

MEMORANDUM ORDER
PAGE - 15

municipal liability claim.

## III. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and orders:

(1) "Defendant City of Normandy Park's Motion for Summary Judgment" (Dkt. #39) is DENIED, and "Defendant John Lievero's Motion for Summary Judgment" (Dkt. #40) is GRANTED IN PART. Specifically, Plaintiff's false arrest and imprisonment claims under both 42 U.S.C. § 1983 and state law shall be dismissed. Plaintiff's due process claims under the Fourteenth Amendment shall also be dismissed. All other claims remain pending before the Court.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

Dated this 3rd day of October, 2008.

                         /s/ Ricardo S. Martinez
                         RICARDO S. MARTINEZ
                         UNITED STATES DISTRICT JUDGE