The Honorable Ricardo S. Martinez

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEVIN BONNER, <br><br> Plaintiff, <br><br> v. <br><br> NORMANDY PARK, a Municipal Corporation, and DETECTIVE JOHN LIEVERO, in his individual capacity, <br><br> Defendants. | NO. C07-0962 RSM <br><br> **PLAINTIFF'S TRIAL BRIEF** |

## I. Introduction

Plaintiff has filed suit against the Defendants City of Normandy Park and Detective John Lievero alleging false arrest/ false imprisonment and excessive force in violation of 42 U.S.C. Section 1983 and state common law. Plaintiff alleges that Detective Lievero is individually liable under Section 1983 and state common law, and the City of Normandy Park is vicariously liable for the acts of Detective Lievero under state law.

The Court has denied in part and granted in part the Defendants' motion for summary

Plaintiff's Trial Brief - 1
Case No. C07-0962 RSM

JEFFREY L. NEEDLE
Attorney at Law
200 Maynard Building
119 First Avenue South
Seattle, Washington 98104
(206) 447-1560 fax (206) 447-1523

judgment. Plaintiff's federal and state law claims for an arrest without probable cause were dismissed. The motion for summary judgment was denied in reference to Plaintiff's claims for excessive force in violation of the Fourth Amendment and assault and battery under state common law.

Both sides filed motions in limine noted for October 17, 2008. Those motions are pending.

## II. Statement of Facts

Plaintiff is 53 years of age. He is 5'10" tall and weighs approximately 190 lbs. He is self-employed as a Certified Public Accountant doing business as Bonner Financial Services. He has no prior criminal history.

On April 25, 2005, at approximately 1:35 p.m., Plaintiff arrived at the Normandy Park Police Department by appointment to deliver documents to Detective Lievero concerning criminal charges that his wife, Nancy, had abused their grandchild. Plaintiff's wife, Nancy Bonner, his daughter, Karis Miles, and his granddaughter, Reagan, age 3, accompanied him. Karis brought various documents, including letters from Child Protective Services, contained in an envelope.

Mr. Bonner and his family were admitted into the police department. Detective Lievero had no reason to believe that Plaintiff or any family member had a weapon when they arrived at the Normandy Park Police Station. They were not frisked for weapons. All members of the Bonner family were escorted back to the interview room with Detective Lievero. What occurred in the interview is generally in dispute. But it is not disputed that Plaintiff became frustrated by what he perceived to be Detective Lievero's lack of cooperation and lack of knowledge about the case. Plaintiff stated: "We know that you are not an idiot, so why are you acting like one." Detective Lievero then terminated the interview.

Plaintiff's Trial Brief - 2
Case No. C07-0962 RSM

JEFFREY L. NEEDLE
Attorney at Law
200 Maynard Building
119 First Avenue South
Seattle, Washington 98104
(206) 447-1560 fax (206) 447-1523

Plaintiff had been in the Normandy Park police department before and knew the location of Chief Kieffer's office. He reasoned that if Detective Lievero refused to take information relevant to the investigation, he would present it to the Chief of Police, especially since he had discussed with the Chief that purpose previously. Plaintiff left the interview room, but instead of turning left toward the reception area, he turned right and with a cup of coffee in his hand began walking toward the Chief of Police's office. The Chief's office is approximately 16-18 feet from the interview room. There was an exit sign at the end of the hall by the Chief's office.

After Plaintiff began walking to the Chief's office, Detective Lievero followed and said "you can't leave that way." Plaintiff responded while walking that he was not intending to leave, but wanted to speak with the Chief. Detective Lievero stated that if Plaintiff wanted to speak with the Chief that he needed to make an appointment, and that he needed to return to reception. Detective Lievero stated that if Plaintiff didn't stop he would be arrested. By the time Detective Lievero had finished making this statement, Plaintiff had already arrived at Chief Kieffer's door and had stopped walking. Nancy Bonner, Karis Miles and her child followed Kevin Bonner and Detective Lievero down the hallway.

When Bonner arrived at the Chief's office, the Chief was standing in the doorway. Detective Lievero arrived at the Chief's door immediately after Bonner. Without any explanation, further instructions or opportunity to return to reception, Lievero grabbed his left wrist and arm, forcing his arm behind his back. Plaintiff told the Chief, who was standing in the doorway, that Lievero was out of control and shaking. The Chief didn't respond. Immediately thereafter another non-uniformed officer appeared (Officer Melewski). Officer Melewski took Plaintiff's left arm from Lievero, and

Plaintiff's Trial Brief - 3
Case No. C07-0962 RSM

JEFFREY L. NEEDLE
Attorney at Law
200 Maynard Building
119 First Avenue South
Seattle, Washington 98104
(206) 447-1560 fax (206) 447-1523

Lievero took his right arm, and they began to walk him down the hall to reception. Detective Lievero, Officer Melewski, Plaintiff, Nancy Bonner, and Karis Miles all agree that Chief Kieffer never laid hands on Mr. Bonner. Kieffer testified to the contrary.

Contrary to Detective Lievero's assertion, Plaintiff did not refuse to return to reception. When Lievero told Plaintiff to stop, he had already stopped at the Chief's door. Lievero immediately grabbed Plaintiff before he had the opportunity to comply with his instruction to return to reception. Chief Kieffer acknowledged that he does not know if Bonner stopped after he was told that he couldn't continue.

Plaintiff did not resist arrest. The Defendants assert that Bonner admitted that he attempted to pull away from Detective Lievero. This is untrue. During Plaintiff's deposition, defense counsel asked Plaintiff whether he remembered an officer pulling his hands behind his back, "and you pulling your arms out to your side." Plaintiff answered, "No. Absolutely not." Defense counsel asked again, "And you don't recall at any time during the interaction with the police officers holding your arms out to avoid the handcuffs; is that correct?" Plaintiff answered again, "my hands were never out." Several sentences later, defense counsel asked again: "And is it your testimony that from the time that you turned to the right and left the office with Officer Lievero and you were finally handcuffed, that you never tried to pull your arms away from him?" Plaintiff answered, "No." Not satisfied, defense counsel again asked: "Did you ever pull your arms away from the officer?" Colloquy followed between Plaintiff's counsel, Plaintiff and Defense Counsel. Defense Counsel then asked the question to be read back, and Plaintiff once again stated that the answer was "no." Plaintiff, his wife, and daughter all state explicitly that Plaintiff never attempted to pull away from an officer or brake with

Plaintiff's Trial Brief - 4
Case No. C07-0962 RSM

JEFFREY L. NEEDLE
Attorney at Law
200 Maynard Building
119 First Avenue South
Seattle, Washington 98104
(206) 447-1560 fax (206) 447-1523

his feet.[1]

As Plaintiff was being "escorted" out of the police station he was tased several times by Detective Lievero. It is undisputed that Plaintiff was first tased while he was still standing, and after being tased the first time then went down to his knees. According to Lievero, Plaintiff was tased a second time, but only after Bonner was on his stomach and the officers were handcuffing him with Melewski on one side and Lievero on the other. Plaintiff insists that he was tased while he was still standing, again while he was on his knees, and again while on his stomach. Lieviero testified that he tased Plaintiff only after he observed Melewski's unsuccessful efforts to place Plaintiff in a position to be handcuffed. But Officer Melewski states in his deposition that he had Plaintiff was under control. No effort was made to handcuff Plaintiff until he was on the ground.

Plaintiff was briefly detained at the Normandy Park Police Station and then released. He was later charge with obstructing an officer. Plaintiff entered into a stipulated order of continuance, and the charges were later dismissed with prejudice.

It is undisputed that Bonner didn't attempt to strike Kieffer, Lievero or Melewski, and that he never attempted to get a weapon from either Kieffer, Lievero, or Melewski. Except that Kieffer assumes that any suspect might have a weapon, it is not disputed that there was no reason to believe that Bonner had a weapon or that he was a flight risk. According to Kieffer, Bonner was not in danger of hurting himself. Except that people who have violated a couple of laws and are on their way to jail have been known to hurt officers, there are no facts which caused Kieffer to believe that Bonner was

---

[1] At the portion of the deposition cited by the defendant, Plaintiff stated that it was a natural reaction to pull away and that it was "possible" that he did, but he declined to say that it was "probable."

Plaintiff's Trial Brief - 5
Case No. C07-0962 RSM

JEFFREY L. NEEDLE
Attorney at Law
200 Maynard Building
119 First Avenue South
Seattle, Washington 98104
(206) 447-1560 fax (206) 447-1523

a danger to him, Lievero or Melewski. There was no basis for believing that Bonner was under the influence of alcohol or drugs. There was no probable cause to believe that Bonner had committed a felony.

### III. Statement of Law

**A. Excessive Force - 42 U.S.C. Section 1983.**

Claims of excessive and deadly force are analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "[U]se of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151.

Factors to be considered in determining the need for the force include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Blanford*, 406 F.3d at 1115 (*quoting Graham*, 490 U.S. at 396, 109 S.Ct. 1865). The Ninth Circuit has ruled that whether the suspect poses an immediate threat to the safety of the officers is the most important of the three *Graham* factors. *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994). But the Graham factors are not exclusive. "[W]hether the plaintiff resisted or was armed, whether more than one arrestee or officer was involved, whether the plaintiff was sober, whether other dangerous or exigent circumstances existed at the time of the arrest, and the nature of the arrest charges." *Chew*, 27 F.3d 1432, 1475 n5.

The Ninth Circuit has further refined this standard by adding additional considerations. First, the inquiry should begin with an assessment of "the quantum of force used." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007). This is necessary "because the factors articulated in

Plaintiff's Trial Brief - 6
Case No. C07-0962 RSM

JEFFREY L. NEEDLE
Attorney at Law
200 Maynard Building
119 First Avenue South
Seattle, Washington 98104
(206) 447-1560 fax (206) 447-1523

*Graham*, and other factors bearing on the reasonableness of a particular application of force are not to be considered in a vacuum but only in relation to the amount of force used to effect a particular seizure." *Id.* (internal quotation and citation omitted). *See also Tekle v. U.S.*, 511 F.3d 839, 844 (9th Cir. 2006)("The first factor in determining whether the force used was excessive is the severity of the force applied. The second factor, and the most important, is the need for the force. The amount of force used is 'permissible only when a strong government interest compels the employment of such force'"); *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir.2002)("[E]even where some force is justified, the amount actually used may be excessive").

In addition, the Ninth Circuit has stated that in assessing the reasonableness of an officer's actions, "the availability of alternative methods of capturing or subduing a suspect may be a factor to consider." *Chew v. Gates*, 27 F.3d 1432, 1441 n.5 (9th Cir. 1994). *See also San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 977 (9th Cir. 2005)("We also had recognized that in assessing reasonableness under the Fourth Amendment an appropriate factor is whether the officer considered alternatives before undertaking intrusive activity implicating constitutional concerns"); *Smith v. City of Hemet,* 394 F.3d 689, 701 (9th Cir. 2005)(en banc)("In some cases, for example, the availability of alternative methods of capturing or subduing a suspect may be a factor to consider").

**1. An Allegation of Domestic Violence Does Not Justify The Use of Force.**

In *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir.2005)(en banc), a resident of that city alleged that police officers used excessive force when they responded to a 911 call from his wife, who claimed that he was physically abusing her. 394 F.3d at 693. The responding officers were aware that Smith

Plaintiff's Trial Brief - 7
Case No. C07-0962 RSM

JEFFREY L. NEEDLE
Attorney at Law
200 Maynard Building
119 First Avenue South
Seattle, Washington 98104
(206) 447-1560 fax (206) 447-1523

was unarmed and that he was in his pajamas, but they nonetheless "slammed Smith against the wall, threw him to the ground, slid him off the porch while face down, pepper-sprayed him repeatedly, and either permitted or instructed [a police dog] to attack him on three occasions, at least one such attack occurring while the officers had him pinned to the ground." *Id.* at 702 (internal citation omitted). Smith filed an action against the officers claiming that they had used excessive force in subduing and arresting him. *Id.* at 694. The district court granted the officers' motion for summary judgment. *Id.* at 695. The Plaintiff appealed and the Ninth Circuit reversed.

Analyzing the officer's conduct in light of the *Graham* factors (and accepting Smith's version of the facts as correct), the Court in *Smith* determined that Smith did not pose an immediate threat because he was unarmed and in his pajamas, notwithstanding the fact that, prior to being handcuffed, he disregarded the officers' orders, refused to put up his hands, and was shouting expletives. *Id.* at 702. The Court also ruled that an allegation of domestic violence did not "warrant the conclusion that Smith was a particularly dangerous criminal or that his offense was especially egregious." *Id.* at 702-03. The Court ruled that although Smith continued to ignore the officers' orders and physically resisted arrest, he did not attack the officers or "show[ ] any signs of fleeing the area." *Id.* at 703. Finally, the Court considered the "availability of alternative methods of capturing or subduing a suspect," concluding that "the officers could and should have used control holds to complete the arrest rather than ... sic[cing the canine] on him once they had him restrained on the ground." *Id.*

**Plaintiff requests a jury instruction on this issue.**

**2. An Officer's Statement That He Was Concerned for Safety Does Not Justify The Use of Force.**

In this case, Mr. Bonner was unarmed and the officers had no reason to believe otherwise.

Plaintiff's Trial Brief - 8
Case No. C07-0962 RSM

JEFFREY L. NEEDLE
Attorney at Law
200 Maynard Building
119 First Avenue South
Seattle, Washington 98104
(206) 447-1560 fax (206) 447-1523

Indeed, if Lievero had any reason to believe that Bonner was armed, it stands to reason that he would have frisked him for weapons before entering the police station. Mr. Bonner made no attempt to attack or strike any of the officers or reach for one of their weapons. Even Chief Kieffer acknowledges that there existed no facts (other than Plaintiff was being arrested) to conclude that Plaintiff was a danger to himself or others. The self-serving statements of Lievero's that he feared for safety are not sufficient to justify the use of force. If they were, no case alleging police misconduct could advance to trial. *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir.2001) ("[A] simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern"). The Defendants argue that their alleged fear that Bonner *might* try and obtain a weapon justifies their use of force. But if that argument succeeds than any armed officer will always be justified in using force regardless of whether a suspect makes an attempt to obtain the officer's weapon.

Bonner made no attempts to flee the scene. Quite to the contrary, the police were insisting that he leave the scene. The underlying crime for which was arrested was neither violent nor in any sense egregious. All officers readily admit that there was no probable cause to believe that Bonner had committed a felony. Officer Melewski states that he was under control. As in *Smith v. City of Hemet*, alternative methods of control were readily available.

**Plaintiff requests a jury instruction to this effect.**

**3. Offensive Comments Toward a Police Officer Does Not Justify the Use of Force.**

In *Winterrowd v. Nelson*, 480 F.2d 1181 (9th Cir. 2007), a suspect was pulled from his car by officers because they suspected that his plates were invalid. After being forced onto the hood of

Plaintiff's Trial Brief - 9
Case No. C07-0962 RSM

JEFFREY L. NEEDLE
Attorney at Law
200 Maynard Building
119 First Avenue South
Seattle, Washington 98104
(206) 447-1560 fax (206) 447-1523

car he called the officers "jackbooted thugs," "armed mercenaries" and "[c]owards." *Id.* at 1185. The Court ruled:

> Assuming that Winterrowd had used such epithets in the past, they would not justify the use of force. No officer likes being called a coward, but Winterrowd is well within his rights in making such statements. "[W]hile police, no less than anyone else, may resent having obscene words and gestures directed at them, they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment.

*Id. See also Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990)("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers")(citing *Houston v. Hill*, 482 U.S. 451, 461 (1987). In this case, Detective Lievero may have been offended that Plaintiff indirectly called him an idiot, but that language does not justify an arrest or the use of force.

**Plaintiff requests a jury instruction to this effect.**

**B. Plaintiff Was Assaulted In Violation of State Law.**

"A battery is '[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent.' An assault is any act of such a nature that causes apprehension of a battery." *McKinney v. City of Tukwila*, 103 Wn.App. 391, 408, 13 P.3d 631 (2000).

Plaintiff has offered a jury instruction to that effect.

**C. The Defendants' Use of Plaintiff's Deposition.**

The Defendants have designated portions of Plaintiff's video taped deposition. In response, Plaintiff has objected to certain of those designations and offered designations to be included. In some instances, the Defendants' designations literally stop in the middle of Plaintiff's answer to avoid

Plaintiff's Trial Brief - 10
Case No. C07-0962 RSM

JEFFREY L. NEEDLE
Attorney at Law
200 Maynard Building
119 First Avenue South
Seattle, Washington 98104
(206) 447-1560 fax (206) 447-1523

testimony unfavorable to the Defendants. In other instances, the Defendants attempt to use portions of the deposition which were directly contradicted by other portions of Plaintiff's deposition, *i.e.*, whether Plaintiff attempted to pull away from Detective Lievero.

The Defendants also offer excerpts of Plaintiff's testimony concerning his daughter's domestic relations disputes, and the nature of the charges against his wife. Plaintiff has a motion in limine pending on these issues.

The Court has yet to rule on Defendants' designations of Plaintiff's video taped deposition. The Court should require the Defendants to have the video deposition edited to reflect the Court's ruling, and any portions designated by Plaintiff.

The Defendants have indicated their intention to offer the video tapped deposition as an exhibit. This would be improper. To the extent allowed, this testimony is no different from any other testimony and is not admissible to memorialize the testimony.

**D. Defendants' Proposed Jury Instructions.**

The defendant has proposed several jury instructions on the issue of a state law violation. The Defendants' proposed instruction concerning the elements of Plaintiff's claim only addresses the issue of assault, and not battery. Contrary to the Defendants' proposed instruction, the Plaintiff can recover even if he did not have an apprehension of harmful and offensive conduct before it occurred. In this case, Plaintiff was not warned and had no other notice that he would be tased. The absence of apprehension before he was tased is irrelevant if the use of force was not reasonable and necessary to effectuate an arrest under state law.

The Defendants offer an instruction on the lawful use of force. In support of the this

Plaintiff's Trial Brief - 11
Case No. C07-0962 RSM

JEFFREY L. NEEDLE
Attorney at Law
200 Maynard Building
119 First Avenue South
Seattle, Washington 98104
(206) 447-1560 fax (206) 447-1523

instruction the Defendants cite to RCW 9A.16.020. This statute addresses self-defense in a criminal setting. But this is not a criminal case. Moreover, the proffered instruction includes elements which are not applicable to the facts of this case, i.e., a person arresting one who has committed a felony; and when used by a party about to be injured. RCW 10.31.050, on the other hand, directly addresses the force to be used by an officer when effectuating arrest. It states simply, "If after notice of the intention to arrest the defendant, he either flees or forcibly resists, the officer may use all necessary means to effect the arrest." Plaintiff had no objection to an instruction to that effect.

The Defendant offers an instruction to the effect that a police officer has a duty to enforce all laws within his jurisdiction, and to take corrective action to prevent or stop a violation where he or she has actual knowledge. In support of this proffered instruction, the Defendants cite RCW 10.93.070. But this statute says nothing of the kind and does not remotely support the instruction. RCW 10.93.070 states that an officer *may* "enforce the traffic or criminal laws of this state throughout the territorial bounds of this state, under the following enumerated circumstances: (1) Upon the prior written consent of the sheriff or chief of police in whose primary territorial jurisdiction the exercise of the powers occurs; (2) In response to an emergency involving an immediate threat to human life or property; (3) In response to a request for assistance pursuant to a mutual law enforcement assistance agreement with the agency of primary territorial jurisdiction or in response to the request of a peace officer with enforcement authority; (4) When the officer is transporting a prisoner; (5) When the officer is executing an arrest warrant or search warrant; or (6) When the officer is in fresh pursuit, as defined in RCW 10.93.120." None of those enumerated circumstances apply to this case.

The Defendants offer an instruction to the effect that a citizen does not have a right to use

Plaintiff's Trial Brief - 12
Case No. C07-0962 RSM

JEFFREY L. NEEDLE
Attorney at Law
200 Maynard Building
119 First Avenue South
Seattle, Washington 98104
(206) 447-1560 fax (206) 447-1523

force to prevent an unlawful arrest which only threatens the loss of freedom. While this is a correct statement of the law, the court has already ruled that Plaintiff's arrest was lawful. This instruction therefore has no applicability to this case.

**E. Punitive Damages Under Federal Law.**

In *Smith v. Wade*, 461 U.S. 30, 34, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) the Court considered whether punitive damages could be awarded only for intentionally malicious conduct or whether the district court properly instructed the jury that it could award punitive damages "if the conduct of one or more of the defendants is shown to be a reckless or callous disregard of, or indifference to, the rights or safety of others." *Id.* at 33, 103 S.Ct. 1625. Focusing on the standards for punitive damages at the time of the enactment of § 1983, the Court concluded that federal and state courts agreed that punitive damage awards "did not require a showing of actual malicious intent; they permitted punitive awards on variously stated standards of negligence, recklessness, or other culpable conduct short of actual malicious intent." *Id.* at 45, 103 S.Ct. 1625.

"In light of the Supreme Court's holding in *Smith*, we have recognized that '[i]t is well-established that a jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.'" *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005). "[W]e conclude that a jury instruction that allows for imposition of punitive damages for an act that was 'oppressively done' and which caused the plaintiff's injury is 'accurate and complete.'" *Id.* at 808.

Plaintiff acknowledges that no punitive damages are recoverable against a municipality. There are only recoverable against Detective Lievero. Plaintiff will introduce IRS w-2 tax form to establish

Plaintiff's Trial Brief - 13
Case No. C07-0962 RSM

JEFFREY L. NEEDLE
Attorney at Law
200 Maynard Building
119 First Avenue South
Seattle, Washington 98104
(206) 447-1560 fax (206) 447-1523

Detective Lievero's income as a police officer.

## IV. Conclusion

Plaintiff was subjected to excessive force in violation of his Fourth Amendment Constitutional rights.

Respectfully submitted this 29 day of October, 2008.

*Jeffrey Needle*
Jeffrey Needle, WSBA #6346
Attorney for Plaintiff

Plaintiff's Trial Brief - 14
Case No. C07-0962 RSM

JEFFREY L. NEEDLE
Attorney at Law
200 Maynard Building
119 First Avenue South
Seattle, Washington 98104
(206) 447-1560 fax (206) 447-1523