UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEVIN BONNER,

        Plaintiff,

   v.

NORMANDY PARK, and DETECTIVE
JOHN LIEVERO

       Defendants.

CASE NO. C07-962RSM

ORDER DENYING DEFENDANT'S
MOTION FOR NEW TRIAL

## I. INTRODUCTION

This matter comes before the Court on "Defendant John Lievero's Motion for New Trial and Other Relief." (Dkt. #116). Pursuant to FRCP 59, Defendant argues that a new trial is justified because the jury verdicts were internally inconsistent, Plaintiff's counsel engaged in attorney misconduct, and the verdict concluding that Defendant used excessive force was against the clear weight of the evidence. Defendant also seeks an order vacating the compensatory and punitive damage awards, or alternatively, a remittitur reducing the awards.

For the reasons set forth below, the Court DENIES Defendant's motion in its entirety.

## II. DISCUSSION

### A. Background

The instant motion arises from a six-day jury trial that concluded on November 13, 2008 wherein the jury returned a verdict against Defendant Officer John Lievero.

ORDER
PAGE - 1

Specifically, the jury found that Officer Lievero used excessive force when he tased Plaintiff Kevin Bonner at the Normandy Park Police Department on April 25, 2005 in violation of Plaintiff's Fourth Amendment rights. (*See* Dkt. #104). The jury awarded $35,000 in compensatory damages and $25,000 in punitive damages to Plaintiff. The jury did not find in favor of Plaintiff on his state law assault and battery claims. Shortly after the Court entered the final judgment, Defendant timely filed the instant motion for a new trial.

**B. FRCP 59**

FRCP 59(a) provides that a "court may, on motion, grant a new trial on all or some of the issues – and to any party . . . after a jury trial, for any reasons for which a new trial has heretofore been granted in an action at law in federal court[.]" FRCP 59(a). The Ninth Circuit has held that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotations and citation omitted). District courts have a duty to weigh the evidence as the court saw it upon a motion for a new trial. *See Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).

Based on FRCP 59 and its corresponding case law, Defendant seeks a new trial based on three different reasons. The Court addresses each argument in turn.

**1. Inconsistencies**

Defendant contends that the jury verdicts were internally inconsistent because the jury found that Defendant used excessive force, but did not commit assault and battery. Therefore Defendant argues that the "two answers cannot coexist [because] they make no sense in the context of the evidence presented in this case." (Dkt. #116 at 5) (citing *Hundley v. D.C.*, 494 F.3d 1097, 1102 (D.C. Cir. 2007)). However, simply because a jury returns what seemingly may be an inconsistent verdict from a legal perspective does not necessarily mean that a new trial should be granted. *See Zhang v. American Gem Seafoods*, 339 F.3d 1020, 1035-36 (9th Cir. 2003) (collecting cases). It is well-settled that "legally inconsistent verdicts 'may nonetheless stand on appeal[.]'" *Id.* (quoting *Int'l Longshoremen's Union v. Hawaiian*

*Pineapple Co.*, 226 F.2d 875, 881 (9th Cir. 1955)). Indeed, "a court retains the authority, even in a civil case, to allow an apparently inconsistent verdict to stand." *Los Angeles v. Heller*, 475 U.S. 796, 805 n. 12 (1986) (Stevens, J., dissenting).[1] Only when one legal conclusion is the prerequisite for another should an inconsistent verdict be set aside. *See Zhang*, 339 F.3d at 1034.

Based upon these well-established principles, the Court finds no reason to disturb the jury's verdict based on alleged inconsistencies. Although the elements of assault and battery may have similarities to the elements of excessive force from a legal perspective, the jury does not have the benefit of examining these elements from the same legal lens as a trained attorney. This is precisely why the historical and majority rule does not compel a district court to grant a motion for a new trial simply because inconsistencies may exist. It is the province of the jury during a jury trial, and only the jury, to apply the facts with the law given to them. Moreover, it is unequivocally clear that assault and battery is not a prerequisite to finding excessive force, nor is one an affirmative defense for the other. The claims simply are not predicated on one another.

Nonetheless, Defendant suggests that *Zhang* and the case law which it stands upon are inapposite because this rule applies only to inconsistent *general* verdicts. Defendant further contends that the verdict form in this particular case was a *special* verdict form because the verdict form in this particular case was labeled as such. However, "[w]here a jury is instructed to apply legal principles and assign liability, the answers to the questions submitted to the jury are not special verdicts, despite the use of those words in the title appended to the form." *Jarvis v. Ford Motor Corp.*, 283 F.3d 33, 56 (2d Cir. 2002) (internal quotations and citation omitted); *see also Babcock v. General Motors Corp.*, 299 F.3d 60, 63 (1st Cir. 2003); *Morris v. Flaig*, 511 F. Supp. 2d 282, 299 (E.D.N.Y. 2007). The Ninth Circuit has made clear that although "[t]he Federal Rules do not define general verdicts, [they] imply that general verdicts do not involve factual findings but rather ultimate legal conclusions." *Zhang*,

---

[1] The Ninth Circuit has noted that this particular finding in Justice Stevens' dissent in *Heller* was not contradicted by the majority opinion. *See Zhang*, 339 F.3d at 1036, n. 9. This Court agrees.

339 F.3d at 1031 (citing FRCP 49(b)). "The key is . . . whether the jury announces the ultimate legal result of each claim. If the jury announces *only its ultimate conclusions, it returns an ordinary general verdict*." *Id.* (emphasis added). If on the other hand, it "returns only factual findings, *leaving the court to determine the ultimate legal result, it returns a special verdict*." *Id.* (emphasis added).

Here, it is clear that the Court only required the jury to arrive at certain legal conclusions. The verdict form asked the jurors to determine whether Defendant used excessive force in violation of Plaintiff's Fourth Amendment rights, and whether Defendant committed assault and battery upon Plaintiff. Nowhere in the verdict form did the Court ask the jury for specific factual findings, and nowhere did the Court indicate to the jury that the Court, and not the jury, would be making the ultimate legal conclusion. The jury returned a general verdict in this case, regardless of the label the Court placed on the form. Consequently, the Court finds no reason to grant Defendant's motion on this ground.

### 2. Attorney Misconduct

Defendant also argues that a new trial should be warranted because Plaintiff's counsel engaged in misconduct by making an improper closing argument, and by violating the Court's order on motions in limine during three different lines of questioning. "To warrant reversal on grounds of attorney misconduct, the flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 736 F.2d 1283, 1286 (9th Cir. 1984) (internal quotations and citation omitted). The conduct complained of must have "prevented the losing party from fully and fairly presenting his case or defense." *Wharf v. Burlington Northern R. Co.*, 60 F.3d 631, 637 (9th Cir. 1995).

In the instant case, Defendant claims that Plaintiff's counsel's closing argument was "specifically intended to evoke the passion and prejudice of the jury." (Dkt. #116 at 7). Defendant specifically indicates that Plaintiff's counsel's references to tasers and the jury's role in ensuring that tasers aren't used freely by police officers throughout his closing was cumulative misconduct. However, there was unequivocally nothing improper about these

statements. Closing argument is exactly what its moniker suggests, an argument. It is not opening statement, it is not confined to the jury instructions, and it certainly does not preclude an attorney from making societal references, as Plaintiff's counsel did here. Tasers, if used improperly by police officers, can indeed be a potentially serious issue in our society. And in a case where the primary issue was whether the Defendant's use of a taser was justified, Plaintiff's counsel is absolutely free to argue about the how tasers can be misused by police officers. Defense counsel was free to rebut these statements in her closing, which she did by arguing that her client's use of the taser was reasonable under the circumstances. To prohibit this type of argument would undoubtedly undermine the "wide latitude" attorneys are allowed in closing argument; a latitude that embraces reasonable inferences from the evidence presented at trial. *See U.S. v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997) (citations omitted). Prohibiting such argument would also substantially chill a fundamental role of an attorney to be a zealous advocate for his or her client.

Defendant argues, however, that Plaintiff's counsel improperly intertwined the heightened mental state for punitive damages with the fundamental issue of liability in this case. Defendant suggests that Plaintiff's counsel inflamed the passion and prejudice of the jury by infusing Defendant's alleged "evil-intentions" into the objective Fourth Amendment reasonableness inquiry as laid out by *Graham v. Connor*, 490 U.S. 386 (1989). But there is nothing in *Graham* or its progeny that places limits upon closing arguments. In any event, the jury was clearly instructed of the *Graham* factors, and the Court did not include any reference to the "evil-intentions" of Defendant as a factor for the jurors to consider in determining whether Plaintiff's Fourth Amendment rights were violated. (*See* Dkt. #105, Instr. No. 13). The Court additionally provided the jury with a separate punitive damage instruction. (*Id*, Instr. No. 20). Therefore Plaintiff's counsel's arguments regarding Defendant's allegedly "evil-intentions" were proper under this instruction.

In addition, the Court does not find any misconduct by Plaintiff's counsel during his questioning of either Chief Rick Keiffer or Sergeant Tom Ovens. The allegedly improper cross-examination of Sergeant Ovens by Plaintiff's counsel is moot for purposes of this

ORDER
PAGE - 5

motion because Defense counsel objected to this inquiry during trial, and the Court sustained the objection. With respect to Plaintiff's counsel's inquiry of Chief Keiffer, Defense counsel did not object during trial. In any event, neither line of questioning by Plaintiff's counsel comes remotely close to tainting the trial in any way. Both parties were given more than sufficient time to develop their arguments during this six-day trial, and Defendant was absolutely able to "fully and fairly present[] his case or defense." *Wharf*, 60 F.3d at 637. As a result, a new trial shall not be granted on this ground.

### 3. Clear Weight of the Evidence

Lastly, Defendant argues that a new trial must be granted because the verdict was against the clear weight of the evidence presented by the case. This argument is also misguided. Determining "the clear weight of the evidence" is a fact-specific endeavor, and an appellate court will generally not reverse the denial of a new trial motion if there was some reasonable basis for the jury's verdict. *See Molski*, 481 F.3d at 729 (collecting cases).

Here, there was clearly a reasonable basis for the jury to conclude that Plaintiff's Fourth Amendment rights were violated. As Plaintiff's counsel indicates, a reasonable juror could easily conclude that (1) tasing an individual whom the officer knows is unarmed, (2) inside a police station with two other officers present, and (3) in a small hallway where the officers have admittedly secured control over the individual, is unreasonable and a violation of the individual's Fourth Amendment right to be free from excessive force. A jury could further conclude that this Plaintiff posed no flight risk, and was not an immediate threat to officer safety. Indeed, this Court denied Defendant's motion for summary judgment on Plaintiff's excessive force claim because there was a question of fact as to whether Defendant's use of force was justified. (*See* Dkt. #63, pp. 9-13).

Defendant nevertheless highlights that Plaintiff's testimony that he was tased five times flies in the face of the taser download data that establishes that only two taser discharges occurred. Defendant overlooks the simple fact that a taser discharge cycle lasts approximately five seconds. Furthermore, the taser discharge employed in this case was not the type where barbs are released from a distance, but rather the type of discharge where pain

is felt upon the taser's contact with the body. Thus, a reasonable juror could conclude that Plaintiff's testimony that he was tased multiple times was consistent with the taser download data, because Defendant may have applied the taser in more than two different areas of Plaintiff's body during the entire encounter.

Overall, Defendant is correct in asserting that this "trial presented a classic case of 'he said, she said.'" (Dkt. #116 at 11). The fact that this trial required the jury to examine two completely dichotomous versions of events is nothing unusual. In fact, it is precisely why our system of jurisprudence relies on a jury to determine which version of events is true when a case proceeds to trial. And in this particular case, there was more than sufficient evidence for the jury to find that the Defendant's use of force was not justified.

**C. Damages**

Defendant also argues that the jury's award of $35,000 in compensatory and $25,000 in punitive damages to Plaintiff should be vacated. With respect to compensatory damages, courts afford "*substantial deference* to a jury's finding of the appropriate amount of damages." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996) (citation omitted) (emphasis added). "Unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork, [courts] uphold the jury's award." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1028 (9th Cir. 2008) (internal quotations and citations omitted). A § 1983 plaintiff can recover damages for "impairment of reputation, personal humiliation, and mental anguish and suffering." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986). Significantly, "[t]he testimony of the plaintiff alone can substantiate a jury's award of emotional distress damages." *Harper*, 533 F.3d at 1029 (citations omitted).

Here, there is nothing "grossly excessive or monstrous" about the jury's $35,000 compensatory damage award. Plaintiff testified that he experienced physical pain, as supported by his trip to the hospital following the incident. Plaintiff further testified that he experienced significant emotional pain and suffering following the incident. This testimony was corroborated by other witnesses Plaintiff's counsel called to the stand. Notwithstanding

this testimony, Defense counsel maintains that she was prohibited from completely developing her theory that Plaintiff was experiencing multiple family and personal stressors prior to the incident. However, the Court certainly provided Defense counsel with sufficient time and leeway regarding this theory, highlighted by days two and three of the trial which featured lengthy cross-examination of Plaintiff discussing these exact topics. Consequently, the Court finds no justification in disturbing the jury's compensatory damage award.

With respect to punitive damages, Defendant argues that the Court should vacate the $25,000 award to Plaintiff. Defendant claims that the evidence is undisputed that Defendant's training authorized him to use a taser when an arrestee is actively resisting arrest, and that this training is consistent with the use of force standard currently being taught at the Washington State Criminal Justice Training Academy. Defendant additionally indicates that case law makes it clear that a taser device is an objectively reasonable use of force.

These arguments ignore the substance of this particular case. Regardless of Defendant's training and whether it comports with current standards imposed by Washington State, the issue confronted with this jury was whether, under the circumstances of this case, Defendant violated Plaintiff's Fourth Amendment rights. Ultimately, the jury determined that Defendant did indeed use excessive force, and therefore decided to make an award of punitive damages.

In any event, the constitutionality of a punitive damages award is determined by assessing: (1) the degree of reprehensibility; (2) the disparity between the harm suffered and the punitive damages award; and (3) the difference between the remedy and the civil penalties authorized or imposed in comparable cases. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574-75 (1996) (the "*Gore* guideposts").

When considering reprehensibility, courts look to whether:

> the harm caused was physical as opposed to economic; the tortuous conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

ORDER
PAGE - 8

"Reprehensibility falls along a sliding scale, with acts and threats of violence at the top, followed by acts taken in reckless disregard for others' health and safety, affirmative acts of trickery and deceit, and finally, acts of omission and mere negligence." *Mendez v. County of San Bernandino*, 540 F.3d 1109, 1120 (9th Cir. 2008) (internal quotations and citation omitted).

In this case, Defendant's conduct could clearly be interpreted as reprehensible. As established above, Plaintiff was not a flight risk, was unarmed, and was surrounded by three police officers. In addition, Plaintiff was not engaged in the commission of a serious crime, and was present *inside* a police station when the tasing occurred. One of the police officers even admitted that Plaintiff was "under control" prior to the tasing. As a result, tasing an individual under such circumstances can certainly be considered as a "reckless disregard" for another's health and safety.

With respect to the second *Gore* guidepost, it is well-established that exemplary damages must bear a "reasonable relationship" to compensatory damages. *See Gore*, 517 U.S. at 580 (citations omitted). Here, there is no significant discrepancy between the harm suffered and the punitive damages award. In fact, the punitive damages award is below the compensatory damages award. *See State Farm*, 538 U.S at 425 (holding that although there is no "bright-line ratio which a punitive damages award cannot exceed . . . few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."). An award of $25,000 is certainly reasonable to both deter and punish an officer's conduct for employing excessive force in light of a $35,000 compensatory damages award.

The last *Gore* guidepost requires the Court to consider any civil penalties authorized or imposed in comparable cases. In this particular case, the amount awarded to Plaintiff is on par, if not at the lower end, with other Fourth Amendment excessive force cases. *See, e.g.*, *Frunz v. City of Tacoma*, 468 F.3d 1141, 1144 (9th Cir. 2006) (affirming a $111,000 punitive damages award by a jury in a § 1983 case involving claims for unlawful entry and excessive force); *King v. Turner*, 2006 WL 4911728 (D. Minn.) (jury awarded $15,000 in punitive

ORDER
PAGE - 9

damages to § 1983 plaintiff who claimed a deputy used excessive force after grabbing plaintiff's arm); *Omelogu v. Canizales*, 2006 WL 4990833 (N.D. Ill.) (jury awarded $250,000 in punitive damages to § 1983 plaintiff who was dragged out of his dorm room).  This guidepost does not weigh in favor of vacating the $25,000 punitive damages award.

In sum, Defendant has failed to show why a new trial should be ordered.  There was a reasonable basis for the jury's verdict in favor of Plaintiff, and the damages awarded by the jury were not excessive.  The award amount shall neither be vacated nor reduced.

### III.  CONCLUSION

Having reviewed the relevant pleadings, and the remainder of the record, the Court hereby finds and ORDERS:

(1) "Defendant John Lievero's Motion for New Trial and Other Relief" (Dkt. #116) is DENIED.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.


DATED this  _2_  day of February 2009.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 10